UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| WILLIAM A. LEE, SR., | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | CAUSE NO.: 2:12-CV-25-TLS |
| CITY OF ELKHART, Dale Pflibsen, in his official and individual capacity, and Richard W. Hubbard, in his private and individual capacity, | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

This matter is before the Court on Defendants City of Elkhart and Dale Pflibsen's Motion for Summary Judgment [ECF No. 52], Defendant Richard W. Hubbard's Motion for Summary Judgment [ECF No. 53], and the supporting and opposing memoranda and exhibits. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Because the Plaintiff has failed to present "definite, competent evidence," *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004), upon which a jury could rely to find in his favor on any of his claims, the Defendants are entitled to judgment as a matter of law.

**BACKGROUND**

On January 17, 2012, Plaintiff William A Lee, Sr., filed a Complaint against the City of Elkhart, and the City's Chief of Police, Dale Pflibsen, in both his official and individual capacities. The Plaintiff also sued Richard W. Hubbard, as a PhD licensed psychologist who

provided professional services to the Plaintiff. The Complaint lists a number of statutes under which the Plaintiff, a former City of Elkhart police officer, is suing, but does not specify which of these statutes apply to which Defendants, and it does not match up the three counts that he identifies with any specific statute. The statutes he cites are: 42 U.S.C. §§ 1983, 1981, 1981a, 1985(3), 1986, 1988, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, and 29 U.S.C. § 2601 *et seq.*

In their motions for summary judgment, the Defendants construe the Complaint as seeking relief on the following grounds: the Plaintiff was denied the benefits and privileges of the Elkhart Police Department general order 1.3.8 because of his race when he was not provided medical intervention and counseling before returning to work in 2009 after a shooting incident; he was denied his rights under the Family and Medical Leave Act (FMLA) because of his race; and the Defendants conspired to terminate his employment with the Police Department in retaliation for applying for FMLA leave and on the basis of his race.

The Defendants explicitly sought summary judgment on all of these claims. In his combined response to the Defendants' Motions, the Plaintiff has substantially narrowed the breadth of his claims. He argues that the City of Elkhart interfered with his substantive rights under the FMLA, *see* 29 U.S.C. § 2615(a)(1) ("It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter."), and that Defendants Pflibsen and Hubbard violated 42 U.S.C. § 1983 when they conspired to delay his diagnosis of Post Traumatic Stress Disorder (PTSD) so that the Plaintiff would not be on approved FMLA leave when Defendant Pflibsen sought to terminate the Plaintiff's employment.

2

**STATEMENT OF FACTS**

The Plaintiff was a police officer with the City of Elkhart Police Department from June 14, 2005, until the City's Board of Public Safety terminated his employment on February 10, 2011. Defendant Pflibsen has been the Chief of the Elkhart Police Department since January 1, 2008.

In 2008, the Plaintiff shot a suspect during the course of his police duties. He was placed on paid administrative leave to see a psychiatrist, per the Elkhart Police Department policy at that time. The Plaintiff returned to work after Dr. V. Thomas Mawhinney indicated that the Plaintiff was ready and able to perform his duties as a police officer. In February 2009, the Plaintiff was present when another officer was shot. The Plaintiff did not ask to go on administrative leave after the incident or to see a psychologist or psychiatrist.

On July 6, 2010, Elkhart Police Internal Affairs investigator Lieutenant Steve Mock was contacted by an employee of a local restaurant. The employee reported that the Plaintiff, while in full police uniform, grabbed a female co-worker's breast with enough force to knock her cell phone out of her front shirt pocket. Another employee also witnessed the event and verified the account. During the course of the internal affairs investigation, Lt. Mock learned of another incident involving a female employee of a 7-Eleven convenience store. The employee had filed a complaint in November 2009 concerning the Plaintiff's unwelcome and rude sexual touches, but the Plaintiff's supervisor, Sergeant Frank Thomas, had not reported the complaint to the Department of Internal Affairs.

The Plaintiff was placed on administrative leave with full pay and benefits while the allegations were investigated. At the conclusion of the investigation, Lt. Mock sustained both

allegations of inappropriate touching and forwarded the case to Chief Pflibsen for disciplinary action against the Plaintiff. When Chief Pflibsen learned that Sgt. Thomas, the Plaintiff's supervisor at the time of the first complaint by the 7-Eleven female employee, did not report the complaint, Chief Pflibsen recommended that Sgt. Thomas be demoted from sergeant to corporal, and the Board of Public Safety approved the demotion. The Plaintiff was given a five-day suspension. Dr. Mawhinney conducted the Plaintiff's psychological evaluation for fitness for duty. Although Dr. Mawhinney did not declare the Plaintiff unfit for duty, he recommended that the Plaintiff receive follow-up counseling with Dr. Hubbard in an attempt to help him acquire skills to change his behaviors. Dr. Mawhinney also recommended that any further incidents of inappropriate sexual conduct result in the Plaintiff's termination from employment as a police officer. In his July 23, 2010, memorandum to the Plaintiff advising of the five-day suspension and counseling, Chief Pflibsen warned:

> I sincerely hope that you have learned from this incident that this type of conduct will not and cannot be tolerated on duty or off duty. I cannot emphasize strongly enough should this type of allegation occur against, and is found to be sustained, you will leave me no choice to request your termination from the Elkhart Police Department through the Board of Safety.

(Ex. 15 to Def.'s Statement of Material Facts, ECF No. 58-15 at 2.)

The Plaintiff saw Dr. Hubbard three times during the months of August, September, and October. On October 7, 2010, Dr. Hubbard completed a short clinical report that summarized the first three sessions with the Plaintiff and stated that Dr. Hubbard was not aware of any behaviors that would make the Plaintiff unfit for duty. Dr. Hubbard stated that the Plaintiff only needed to complete the appointment scheduled for November 1, 2010, before he would be released from treatment.

Then, on October 28, 2010, a female named Jackie Cottrell reported to police officers during an arrest that the Plaintiff, while on duty and in full police uniform, had come to her house in May 2010 and had sex with her. Ms. Cottrell reported that the Plaintiff came to her house, informed her that there was a warrant for her arrest, and had sex with her while he was in his uniform. The Plaintiff denied the allegations.

After the new allegations of misconduct, the Plaintiff returned to Dr. Hubbard for an evaluation of stress related symptoms. The Plaintiff told Dr. Hubbard that his wife believed he was exhibiting symptoms of PTSD. After the session, Dr. Hubbard provided a report to the Elkhart Police Department noting that the Plaintiff's symptoms were currently at a level that made it unlikely that he could provide an acceptable standard of safety and judgment in his job, and recommending that he take off work for seven to ten days. The Elkhart Police Department did not have any communication with Dr. Hubbard regarding its investigation into the new allegations.

On November 30, 2010, the Plaintiff returned to Dr. Hubbard for a fifth session. Afterwards, Dr. Hubbard sent a letter to the police department clearing the Plaintiff to return to work on December 2, 2010. On December 14, during the Plaintiff's final session with Dr. Hubbard, the Plaintiff told Dr. Hubbard that his wife believed that he had PTSD, and that he was experiencing an increased level of anxiety and tension. The Plaintiff then told Dr. Hubbard that he wanted to seek an evaluation for PTSD from another mental health provider. No further appointments were scheduled because the Plaintiff indicated that he did not feel the need to come back and was more likely to seek treatment from the other provider. After the session, Dr. Hubbard prepared a report, noting that the Plaintiff was experiencing an increase in anxiety and

5

tension that made it unlikely he could perform his job safely, and further noted that the Plaintiff needed to be off work until his anticipated evaluation at the Center for Behavioral Medicine.

In December, the Plaintiff had started the process for taking FMLA leave. He obtained a Notice of Eligibility and Rights & Responsibilities and Provider Certification Form that had been prepared for him on December 27, 2010. The Plaintiff was still on paid, administrative leave, and Chief Pflibsen contacted Dr. Hubbard and they discussed the fact that the Plaintiff was seeking treatment elsewhere to get testing for PTSD, and that Dr. Hubbard had not diagnosed the Plaintiff with PTSD. Chief Pflibsen requested that Dr. Hubbard document the details of their conversation in a letter. In response, Dr. Hubbard prepared a Clinical Summary dated January 7, 2011, stating that the Plaintiff had Adjustment Disorder with Mixed Emotional Features. Dr. Hubbard indicated that it was the Plaintiff who believed he had symptoms of trauma related to his police work and who wanted to get tested for PTSD. Although Dr. Hubbard had informed the Plaintiff that his symptoms were not consistent with PTSD, he agreed to recommend that the Plaintiff be off work while he pursued this testing. Chief Pflibsen was also in the process of deciding what action to take with respect to the Plaintiff's disciplinary history and the latest allegation of misconduct. Chief Pflibsen indicated that he would advise the Plaintiff how he intended to proceed, and that he would remain on paid administrative leave unless notified differently. By this time, the Plaintiff had provided the FMLA Certification form to Dr. Hubbard.

According to Chief Pflibsen he decided, based on the Plaintiff's disciplinary history, including the severity of the allegations against him, to seek the Plaintiff's termination by the Board of Public Safety. Chief Pflibsen advised the Plaintiff of his intentions on January 18,

6

2011.

At the end of January, Dr. Hubbard completed the form, indicating that Plaintiff was no longer under his care and that he was unaware of any developments in terms of symptoms or diagnosis in the past five weeks. The Plaintiff retrieved the forms and submitted them to the Human Resources Department on January 26, 2011. The form was not processed by the Department, but was misfiled and did not surface until a search for records was conducted as part of the discovery in the Plaintiff's lawsuit two years later.

The City of Elkhart Board of Public Safety held a two-day hearing regarding Plaintiff's termination on February 8 and 10. The Board voted in favor of the Plaintiff's termination, effective February 10.

City of Elkhart Police officers are guaranteed 180 days of paid medical leave, which is counted against FMLA leave entitlement. When an officer is on administrative leave, he is not required to use sick or vacation time, and the time does not count toward paid medical leave. If the Plaintiff had been on FMLA leave when the termination proceedings were completed and his employment ended, he would have received the same pay and compensation that he received by being on administrative leave.

## ANALYSIS

**A.  The FMLA Claim**

The FMLA entitles any eligible employee suffering from a serious health condition that renders him unable to perform the functions of his position to twelve workweeks of leave during each twelve-month period. 29 U.S.C. § 2612(a)(1)(D). The FMLA makes it unlawful for an

employer to interfere with an employee's attempt to exercise any FMLA rights. *Id.* § 2615(a)(1). The plaintiff carries the burden of proving an FMLA interference claim, *see Darst v. Interstate Brands Corp.*, 512 F.3d 903, 908 (7th Cir. 2008), and cannot succeed unless he establishes that he was entitled to leave under the FMLA and his employer denied him FMLA benefits to which he was entitled. *See Righi v. SMC Corp.*, 632 F.3d 404, 408 (7th Cir. 2011) (setting forth elements).

The Plaintiff claims that he was denied an FMLA entitlement when Chief Pflibsen frustrated his attempts to obtain FMLA leave and when the City misplaced his Certification and did not act on his request for FMLA leave, either to grant or deny the leave. The Plaintiff, however, was already on paid administrative leave when he requested FMLA leave, and continued to be on such leave until the end of his employment. The time on administrative leave did not count toward the 180 days of paid medical leave that police officers were entitled to take. Thus, the Plaintiff was granted more favorable benefits than those awarded under the FMLA and suffered no prejudice. *See, e.g.*, *Ridings v. Riverside Med. Ctr.*, 537 F.3d 755, 762 (7th Cir. 2008) (denying interference claim where plaintiff did not contend that she was prejudiced by her employer's failure to designate leave as FMLA-qualifying); *see also Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 88 (2002) (striking down a regulation that punished an employer's failure to provide timely notice that leave was designated as FMLA leave by denying the employer any credit for leave that was granted before the notice because the penalty was "unconnected to any prejudice the employee might have suffered from the employer's lapse").

The Plaintiff appears to be arguing that one of the prejudices he suffered was that he was not reinstated to his former position, as is guaranteed by 29 U.S.C. § 2614(a). His arguments

8

suggest that he would have been immune from termination if he was diagnosed with PTSD and placed on FMLA leave. However, the FMLA does not entitle a restored employee to "any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave." 29 U.S.C. § 2614(a)(3)(B). This means that "[a]n employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period." 29 C.F.R. § 825.216(a). Conspicuously missing from the Plaintiff's case is any challenge to the actions of the Safety Board to terminate his employment after multiple allegations of sexual misconduct were substantiated. Thus, the Plaintiff has not established that he was denied a benefit—continued employment—to which he was entitled. *See Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 636 (7th Cir. 2009) (no FMLA interference claim where the employer set forth evidence that the plaintiff "was not entitled to resume his employment upon his return from leave because the company had, after an investigation, determined that he had not performed his duties in a competent manner prior to the commencement of his leave"); *Ogborn v. United Food & Commercial Workers Union*, 305 F.3d 763, 768 (7th Cir. 2002) ("[E]mployers may fire employees for poor performance if they would have fired them for their performance regardless of their having taken leave.").

Additionally, under the law governing FMLA interference claims, the Plaintiff must present facts demonstrating his entitlement to FMLA leave. The Certification the Plaintiff returned to his employer did not show that he was entitled to FMLA leave. Dr. Hubbard did not opine that the Plaintiff suffered from a serious health condition, but stated he was no longer treating the Plaintiff and was not aware of any developments in terms of symptoms or diagnosis.

9

A "serious health condition" includes an illness resulting in more than three days of incapacity and requiring treatment at least two times by a health-care provider. 29 U.S.C. § 2611(11); 29 C.F.R. §§ 825.113, 825.115(a); *Price v. City of Fort Wayne*, 117 F.3d 1022, 1024 (7th Cir. 1997). When an employee requests leave for such a condition, the employer may request certification by the employee's health-care provider, 29 U.S.C. § 2613(a), and that certification is sufficient if it provides the date the serious health condition began, its probable duration, relevant medical facts, and a statement that the employee is unable to work. 29 U.S.C. § 2613(b); 29 C.F.R. § 825.306. The only argument the Plaintiff provides that he suffered from such a condition is that there was "no question that [the Plaintiff was] placed off duty by his doctor for health reasons." (Pl.'s Combined Mem. 10, ECF No. 69.) The Plaintiff does not identify which doctor he is referring to. If he means Dr. Hubbard, the record is that Dr. Hubbard's last session with the Plaintiff was on December 14, that Dr. Hubbard did not believe the Plaintiff suffered from PTSD, and that Dr. Hubbard acknowledged that the Plaintiff would be seeking an assessment with another provider.

As an aside, the Plaintiff claims that the City discriminated against him because it required him to obtain the Certification by a certain date, but that it did not require white officers to obtain certification in this same manner. The basis of the Plaintiff's argument appears to be a typographical error in the date that was placed on his form, which indicated that his Certification was due on a date that had already passed. The forms, requested by the Plaintiff in December 2010, indicated that the Health Care Provider Certification was due by January 12, 2010. It is not plausible to suggest that, by this error in adjusting for the new year, the City intended to discriminate against the Plaintiff based on his race, or to interfere with his FMLA rights. *See*

*Parker v. Fed. Nat'l Mortg. Ass'n*, 741 F.2d 975, 980 (7th Cir. 1984) ("The district court is not required to evaluate every *conceivable* inference which can be drawn from evidentiary matter, but only reasonable ones.").

B.  **Conspiracy**

The Plaintiff claims that Defendant Pflibsen and Defendant Hubbard conspired to deprive him of the equal protection of laws secured by the Constitution or laws of the United States. "To establish § 1983 liability through a conspiracy theory, a plaintiff must demonstrate that . . . a state official and private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights." *Williams v. Seniff*, 342 F.3d 774, 785 (7th Cir. 2003).

The totality of the Plaintiff's analysis of this claim follows:

> In this case the agreement centered around the interest of Chief Pflibsen, operating under color of state law, in terminating Lee's employment as an Elkhart Police Officer before he could obtain a determination as to whether he suffered from undiagnosed PTSD, which may have caused his latest difficulties for which Pflibsen would seek termination if he did not resign from his position. The joint collaborative actions of Pflibsen, Moore and Hubbard deprived Lee of his substantive FMLA rights, privileges, and equal protection of the laws secured by the Constitution or laws of the United States.
>
> Dr. Hubbard, who gave Lee a DSM diagnosis of 309.28, refused to test Lee even though Lee told him that his wife believed he was exhibiting PTSD symptoms. He did nothing to determine whether Lee suffering from PTSD even though he could have tested and evaluated Lee as did Dr. Wade and the Psychologist who referred Lee to him through Chief Pflibsen for follow up counseling with Lee. But he refused to do so. Why?

(Pl.'s Combined Mem. 12, ECF No. 69.)

The fact that Dr. Hubbard did not test the Plaintiff for PSTD is insufficient to support an inference that he was joined in a conspiracy with Chief Pflibsen. In comparison to the Plaintiff's rank speculation that the absence of testing suggests a conspiracy, Dr. Hubbard offers three

11

reasons, supported by the designated evidence: (1) Dr. Hubbard provides therapy but does not conduct psychological testing or prescribe medications; (2) Dr. Hubbard did not believe that the Plaintiff actually suffered from PTSD; and (3) Dr. Hubbard's purpose for counseling was to deal with the allegations of sexual misconduct. And although the Plaintiff implies that his PTSD may have been the underlying cause of the actions he took that led to his termination, none of the evidence suggests this connection. Likewise, none of the evidence suggests that the absence or existence of any such diagnosis was relevant to the termination proceedings. To the contrary, the record adequately shows that they were unrelated. On January 21, 2011, the Plaintiff received psychological testing from Dr. Stephanie Wade indicating that he had PTSD. However, she did not make any connection between the inappropriate sexual conduct and PTSD, nor did the Plaintiff ask her to testify at his termination proceedings.

The Plaintiff states that there are genuine issues of fact regarding whether he was discouraged to file his FMLA papers, but has not demonstrated that the timing of his return of FMLA paperwork had any impact on the outcome of his termination proceedings. Before a nonmoving party "can benefit from a favorable view of the evidence, he must first actually place evidence before the courts," *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010), and the Plaintiff has not presented any evidence connecting his FMLA request or his eventual PTSD diagnosis to Chief Pflibsen's decision to seek the termination of his employment. *See also Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008) ("Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute.").

Another problem with the Plaintiff's claim is that both the Defendants state that the only interaction they had was related to the Plaintiff's intentions to seek out a provider to administer

PTSD testing. Dr. Hubbard did not make any recommendations regarding the Plaintiff's continued employment, and Chief Pflibsen did not direct Dr. Hubbard how to handle the FMLA request. The Plaintiff has no credible evidence to refute this, stating only that the evidence shows they "spoke on the telephone at least once." (Pl.'s Statement of Genuine Issues 4, ECF No. 68.) However, even the existence of numerous phone calls between alleged conspirators, "standing alone, merely proves that [the individuals] remained in contact. *Goetzke v. Ferro Corp.*, 280 F.3d 766, 778 (7th Cir. 2002) ("To assert that the calls are evidence of a conspiracy is simply speculation."). An agreement to violate a plaintiff's civil rights may be inferred from circumstantial evidence "only if there is sufficient evidence that would permit a reasonable jury to conclude that a meeting of the minds had occurred and that the parties had an understanding to achieve the conspiracy's objectives." *Sow v. Fortville Police Dep't*, 636 F.3d 293, 305 (7th Cir. 2011) (quoting *Hernandez v. Joliet Police Dep't*, 197 F.3d 256, 263 (7th Cir. 1999)). No rational jury could infer from the Plaintiff's meager facts an understanding or agreement between Chief Pflibsen and Dr. Hubbard to inflict injury on the Plaintiff.

A district court should deny a motion for summary judgment only when the non-moving party presents admissible evidence that creates a genuine issue of material fact. *Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011) (citing *United States v. 5443 Suffield Terrace*, 607 F.3d 504, 510 (7th Cir. 2010); *Swearnigen–El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 859 (7th Cir. 2010)). The Plaintiff's submission does not create genuine issues as to any facts that would impact the outcome of his various claims, and the Defendants are entitled to judgment as a matter of law.

## CONCLUSION

For the reasons stated above, the Court GRANTS the Defendants City of Elkhart and Dale Pflibsen's Motion for Summary Judgment [ECF No. 52], and GRANTS Defendant Richard W. Hubbard's Motion for Summary Judgment [ECF No. 53]. The Clerk will enter judgment in favor of the Defendants and against the Plaintiff.

SO ORDERED on February 11, 2014.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION